IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LARRY G. FRYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:06CV982 |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Larry G. Frye seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for Disability Insurance Benefits. The Commissioner's decision became final on September 28, 2006, when the Appeals Council found no basis for review of the denial decision of an Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## The Claimant

Plaintiff Frye was born on June 6, 1956, and was 45 years of age on his alleged onset date of disability. He has a high school education and two years of community college, earning a degree in hospitality supervision. Plaintiff served in the United States Navy for approximately 18 years where he worked as a cook and baker. (Tr. at 626-27.) He has past work experience in the hospitality business as a baker and in purchasing and receiving, and has also worked as a receptionist. (*Id*. at 629-30.) Plaintiff alleges disability as of August 29, 2002.

## The Administrative Proceedings

Plaintiff filed the application for Disability Insurance Benefits under review in this action on November 7, 2002, alleging a disability onset date (as amended at the administrative hearing) of August 29, 2002, due to a large number of exertional and non-exertional impairments. His claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on June 17, 2004, and a decision denying benefits was issued by the ALJ on February 23, 2005. Plaintiff filed a request for review, and on September 28, 2006, the Appeals Council found no basis for review of the ALJ's decision.

The findings of the ALJ relevant to this judicial review include the following:

1.  Plaintiff meets the disability insured status requirements of the Social Security Act and was insured through the date of the ALJ's decision.

2. Plaintiff has not engaged in substantial gainful activity at any time relevant to the decision.

3-4. Plaintiff's degenerative disc disease of the cervical and lumbar spines, cervical spondylosis, fibromyalgia by history, peripheral neuropathy, and chronic otitis externa are severe impairments, but do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Plaintiff's allegations regarding his limitations are not totally credible.

6. Plaintiff has the residual functional capacity of "occasionally lifting 10 pounds and frequently lifting 20 pounds, using his left upper extremity for support only"; to sit, stand and/or walk up to six hours of an eight hour workday in any combination, so long as he has the option of alternating between sitting and standing; and to meet the mental requirements of unskilled work. (Tr. at 266.)

7. Plaintiff is unable to perform any past relevant work.

8-10. Plaintiff is a "younger individual" with more than a high school education but with no transferable skills.

11. Although Plaintiff's exertional limitations do not allow him to perform the full range of light work, using Medical Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the

national economy, as identified by the Vocational Expert ("VE"), that Plaintiff could perform.

12. Plaintiff has not been under a "disability" as defined by the Social Security Act from August 29, 2002 through the date of the decision.

The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 404.1520. Under the regulations, the

-4-

ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering the claimant's age, education and work experience. *Id.*

In the case at bar, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act through February 23, 2005. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to her decision. Proceeding to step two, the ALJ found that Plaintiff suffers from degenerative disc disease of the cervical and lumbar spines, cervical spondylosis, fibromyalgia by history, peripheral neuropathy, and chronic otitis externa, impairments that are severe within the meaning of 20 C.F.R. § 404.1520(c). The ALJ proceeded with the sequential evaluation and found at step three that Plaintiff does not have an impairment, or combination of impairments, that meets or equals the ones listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ continued her evaluation at step four, finding that Plaintiff is not capable of returning to any past relevant work. Concluding her evaluation at step five, the ALJ found that Plaintiff remained capable of occasionally lifting

10 pounds and frequently lifting 20 pounds, using his left upper extremity for support only; can sit, stand, and/or walk up to six hours of an eight hour workday in any combination, so long as he has the option of alternating between sitting and standing; and can perform the mental requirements of unskilled work. Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Medical-Vocational Rule 202.21 provided a framework for decision-making and that Plaintiff remained capable of performing specific jobs in the national economy identified by the VE in testimony at the administrative hearing. The ALJ concluded that Plaintiff was not disabled during the time period under review.

In this action for judicial review, Plaintiff Frye asserts that the ALJ committed two errors of law that cause her decision to be flawed and unreliable and should cause the Court to set aside the decision. First, Plaintiff contends that the ALJ erred in her evaluation of Plaintiff's mental impairment. Second, Plaintiff argues that the ALJ erred at step five of the sequential evaluation in the manner in which she construed the testimony of the vocational expert who responded to hypothetical questions posed by the ALJ. After careful review, the Court finds that Plaintiff's second assignment of error has merit, and the Court finds legal error in the ALJ's decision at step five of the sequential evaluation. Finding this error, the

Court will recommend that this matter be remanded to Commissioner for further proceedings consistent with this opinion.[2]

In the numbered findings of her decision, the ALJ described Plaintiff's residual functional capacity ("RFC") in brief terms. She found that "[t]he claimant has [the] residual functional capacity to perform unskilled light work with a sit or stand option." (Tr. at 269.) Earlier in her decision, however, within her "Evaluation of the Evidence" section, she set out a more detailed version of Plaintiff's RFC. She wrote that:

> Based on a careful consideration of the entire record, the undersigned finds the claimant to be capable of occasionally lifting 10 pounds and frequently lifting 20 pounds, using his left upper extremity for support only; can sit, stand, and/or walk up to six hours of an eight hour workday in any combination, so long as he has the option of alternating between sitting and standing. He remains capable of performing the mental requirements of unskilled work.

(*Id*. at 266.) Presumably, the finding that Plaintiff can lift 10 pounds "occasionally" and 20 pounds "frequently" results for a scrivener's error wherein the words occasionally and frequently were transposed. The definition of "light work" provides that light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, *see* 20 C.F.R. § 404.1567(b), and undoubtedly the ALJ intended a

---

[2] Finding error that requires remand, the Court does not reach Plaintiff's first assignment of error. On remand, all factual and legal issues are open for redetermination by the ALJ.

reference to these provisions.[3] It is not this portion of the RFC that plays a role in the error ultimately made by the ALJ, however, but the portion that specifies that Plaintiff's lifting ability is further limited in that he can "[use] his left upper extremity for support only." (Tr. at 266.)

The ALJ's finding of a functional limitation related to Plaintiff's left arm is based upon medical evidence in the record concerning Plaintiff's left-sided weakness with atrophy. (*Id*. at 571, for example.) Presumably, this limitation is related to Plaintiff's severe impairment of degenerative disc disease of the cervical and lumbar spine with neuropathy, although the ALJ does not precisely identify the source of the limitation in her evaluation of the evidence. (*Id*. at 526-27.) What is important for this judicial review is that Plaintiff's RFC, as found by the ALJ, included limitations on his lifting ability, with Plaintiff "using his left upper extremity for support only."

At the close of the administrative hearing, the ALJ posited hypothetical questions to the VE. First, the ALJ asked the VE to assume a person of Plaintiff's age, educational level and work experience who could do no more than light work. The VE was also asked to assume that this person required a sit/stand option and that the person has no deficits of memory or concentration and could accept directions from a supervisor, work with co-

---

[3] If the ALJ meant something else, the finding, as written, remains ambiguous and seemingly contradictory, and would require a remand by virtue of its lack of clarity.

workers, and adapt to changes in the workplace. The VE responded that such a person could work as a receptionist or procurement clerk, jobs that were in the semi-skilled range.

In a second hypothetical question, the ALJ asked the VE to assume the same circumstances as put forth in the first hypothetical but to also assume that the person had mental and psychological problems that would allow the person to be able to remember and understand simple directions but would reduce the ability for sustained concentration for simple, routine tasks to only a two-hour period. The VE was to assume further that the person would have no restrictions on accepting directions, social interaction, and adapting to change. The VE answered, "Your Honor, a person so described without any other restrictions on physical capacity in my experience would be able to perform assembly type work." (Tr. at 650.) The VE described the "assembler" jobs, of which there would be many categories and numbers, as unskilled.

Finally, the ALJ asked the VE to assume that full credibility were to be assigned to Plaintiff's testimony at the administrative hearing, which the VE had just heard. The ALJ asked if Plaintiff could perform his past work. The VE answered, "No, Your Honor." (*Id*. at 651.) The ALJ then asked if Plaintiff, assuming his full testimony were to be credited, could do any type of work. The VE testified:

> A: No, Your Honor. The testimony I heard indicating the pain levels we find that the greater the pain the less likely a person is able to maintain a consistent pace throughout the day. We also find that an individual unable – I'm not sure but it sounded like the upper extremity was not even

used in opposition for tasks which would render the assembly jobs that I offered as inappropriate to that physical –

Q: Okay.

A: – impairment. Also an individual that basically is – does not initiate activities, does not venture out independently and occasionally needs to remain in complete darkness, when after physical exertion develops weakness and headaches would make it very difficult for a person to have a good work – that the absenteeism would probably –

Q: Okay.

A: – well, most likely in my opinion not allow the individual to maintain competitive employment.

(Tr. at 651-52.)

The ALJ then asked Plaintiff's attorney if he had questions for the VE. The attorney inquired "if the inability to use the left upper extremity would [] alone preclude the jobs identified?" The VE responded, "[w]hen combined with the other requirements in the hypotheticals, yes, it would." (*Id*. at 653.)

A vocational expert's testimony can constitute substantial evidence upon which an ALJ may rely if it is given in response to a hypothetical question that fully sets out all of the claimant's impairments. *See Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). There must be a full match, however, between the limitations assumed by the VE, when the VE identifies jobs the hypothetical person can do, and the limitations ultimately found by the ALJ to characterize the plaintiff's actual residual functional capacity. In the case at bar, as is shown below, there is not a good match between the VE's assumptions and the RFC

ultimately found by the ALJ for Plaintiff Frye, and therefore the ALJ was not free to rely on the VE's testimony to identify jobs which Plaintiff can do.

As noted earlier, the ALJ's decision in this case includes two versions of her RFC findings, one in the "Findings" section of the decision and another in the "Evaluation of the Evidence" section. In her numbered findings, the ALJ found for Plaintiff Frye an RFC defined as the capacity "to perform unskilled light work with a sit or stand option." (Tr. at 263.) That RFC lines up well enough with regard to an opinion given by the VE in response to a hypothetical question that assumed a person with only those limitations. (*Id*. at 649- 51, wherein the VE identifies categories of unskilled jobs as an "assembler.") However, the ALJ's more detailed description of Plaintiff's RFC found Plaintiff capable of "occasionally lifting 10 pounds and frequently lifting 20 pounds, using his left upper extremity for support only; can sit, stand, and/or walk up to six hours of an eight hour workday in any combination, so long as he has the option of alternating between sitting and standing. He remains capable of performing the mental requirements of unskilled work." (Tr. at 266.) This statement of Plaintiff's RFC adds an exertional limitation that Plaintiff use his left upper extremity "for support only." There is in the record no hypothetical question asked by the ALJ to match this RFC finding. There appears, therefore, to be an error of substantial evidence in the ALJ's reliance on the VE's identification of unskilled jobs as an assembler as work that Plaintiff can do despite his limitations.

Actually, the administrative record is a little more complicated than this. Although the ALJ did not ask a hypothetical question based upon an assumption of limitations that included an ability to use the left upper extremity for support only, the VE volunteered an opinion somewhat related to this issue. When the ALJ asked the VE to assume that Plaintiff's Frye's hearing testimony were to be found fully credible, the VE opined that a person with such impairments as described by Plaintiff could not do any jobs in the national economy. She focused first on Plaintiff's testimony on pain, a matter not in issue on this review. She then turned to Plaintiff's testimony regarding his left-sided weakness and stated, "[w]e also find that an individual unable – I'm not sure but it sounded like the left upper extremity was not even used in opposition for tasks which would render the assembly jobs that I offered as inappropriate to that physical . . . impairment." (Tr. at 651-52.) The issue before the Court becomes whether this testimony by the VE now serves adequately to "match up" with the detailed RFC found by the ALJ in order to constitute substantial evidence that there are jobs that Plaintiff can do, making him "not disabled" for purposes of the Social Security Act.

The Commissioner argues in briefing that:

> The VE testified that the assembly jobs she had identified could not be performed if Plaintiff's "left upper extremity was not even [able to be] used in opposition for tasks." This indicates that the identified jobs could be performed as long as the left upper extremity could be used in opposition *or as support* for actions taken with Plaintiff's right hand and arm. The ALJ did not find that Plaintiff was unable to use his left upper extremity at all but

>   rather that Plaintiff's left upper extremity could be used for support and thus
>   the VE's testimony took this factor into account.

(Docket No. 15, Commissioner's Mem. at 15)(emphasis added.) In short, the Commissioner interprets the RFC limitation that Plaintiff's left arm be used "for support only" to not preclude, but in fact to encompass, an ability by Plaintiff to use that arm "in opposition" for assembly tasks. This is not a particularly natural reading of the ALJ's words. The "support" the ALJ mentions, without a clearer definition, is more commonly read as postural support or some form of assist in the specific task of lifting. And this is not, to the Court's mind, necessarily equivalent to the sort of presumably continuous or frequent use of the left arm "in opposition" as the VE has required for an ability to perform the unskilled assembly jobs she identified.

The purpose of hearing the testimony of a vocational expert is so that an individualized and particularized examination can be made of the match (or lack thereof) between the claimant's residual functional capacity and the demands of specific jobs. That examination was flawed here, since there was no proper accounting for the RFC limitation that Plaintiff use his left arm "for support only." On remand, the ALJ will need to clarify the nature and scope of this physical limitation, and then include that limitation in a proper hypothetical question to the VE that includes all of the limitations found by the ALJ. Vocational expert testimony fails to meet the substantial evidence standard if the VE does not precisely consider the claimant's impairments. *See Swaim v. Califano*, 599 F.2d 1309,

-13-

1312 (4th Cir. 1979)(ALJ may not rely upon the answers to a hypothetical question when the hypothesis fails to fit the facts.) For a failure of substantial evidence, this action should be remanded to the Commissioner for further proceedings consistent with this opinion.

Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 11) be granted, that the Commissioner's motion for judgment on the pleadings (Docket No. 14) be denied, and that this action be remanded to the Commissioner for further proceedings consistent with this opinion.

                                                                 /s/ P. Trevor Sharp
                                                 United States Magistrate Judge

Date: October 8, 2008